**Kathleen BURNS, Plaintiff,**

v.

**Jeh JOHNSON and David Johnson, Defendants.**

**Civil Action No. 13–12155–JLT.**

United States District Court, D. Massachusetts.

Signed May 9, 2014.

Jared S. Burke, Timothy M. Burke, Law Offices of Timothy M. Burke, Needham, MA, for Plaintiffs.

Christine J. Wichers, United States Attorney's Office, Boston, MA, for Defendants.

## MEMORANDUM

YOUNG, District Judge.

### I. *Introduction*

The plaintiff Kathleen Burns ("Burns") brings this suit against the defendants Jeh Johnson, the Secretary of Homeland Security (the "Secretary"), who is sued in his official capacity only; and David Johnson ("Johnson"), who is sued in his official and individual capacities, for alleged gender discrimination, gender harassment, and other related claims (collectively "the De-

fendants"). Presently at issue is the Defendants' *Motion to Dismiss All Claims Except Count 1 Against the Secretary* [# 18]. For the following reasons, the *Motion* is ALLOWED IN PART and DENIED IN PART.

## II. *Background* [1]

Burns worked in the Boston Field Office of the Federal Air Marshal Service ("FAMS").[2] FAMS is part of the Transportation Security Administration, which falls within the Department of Homeland Security.[3] Most of the employees in the FAMS Boston office are law enforcement officers.[4]

Burns, a civilian employee,[5] worked part time [6] as a Program Assistant in the operations division.[7] As part of her job, Burns was responsible for "the scheduling and assignment of Air Marshals to security missions on international flights throughout the world." [8] In performing this work, Burns coordinated with the international branch of FAMS.[9]

The head of the Boston office is the Supervisory Agent in Charge ("SAC").[10] On May 7, 2012, Johnson joined the Boston office as the new SAC.[11] Soon thereafter, Johnson began asking other employees about Burns' job duties and her part-time schedule.[12] After speaking with the international branch of FAMs, Johnson complimented Burns, saying that "everyone there spoke very highly" of her and her job performance.[13] Nevertheless, because the international planning staff told Johnson that they preferred to deal directly with Burns, and she worked only four nights per week, Johnson asked Burns how she handled international issues that arose on her days off.[14] Burns responded that she handled such issues by phone or email, in both cases using her work-issued Blackberry.[15] Johnson responded that he was "not paying [Burns] to work from

1. Contrary to Burns' assertion that this court "is required to make findings of fact," Pl.'s Mem. Law Supp. Her Opp'n Defs.' Mot. Dismiss, 47 [# 32] [hereinafter Pl.'s Mem.], because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Burns' *Complaint, see Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.,* 524 F.3d 315, 321 (1st Cir.2008), and construes those facts in the light most favorable to her, *see Pettengill v. Curtis,* 584 F.Supp.2d 348, 362 (D.Mass.2008) (Wolf, J.) (quoting *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 96 (1st Cir.2007)).

2. *See* Compl. & Jury Demand ¶¶ 8, 9, 11 [# 10] [hereinafter Redacted Compl.]. Burns filed her *Complaint* under seal. *See* Compl. & Jury Demand [# 1]. Thereafter she filed a redacted version of the complaint. *See* Redacted Compl. [# 10]. Throughout this opinion, this court cites to Burns' redacted version of the complaint and does not relate information that she redacted from the original version.

3. Redacted Compl. ¶ 2 [# 10].

4. *See* Redacted Compl. ¶ 32 [# 10].

5. *See* Redacted Compl. ¶¶ 27, 32 [# 10].

6. *See* Redacted Compl. ¶¶ 20–22 [# 10]. Specifically, she worked the night shift on Thursdays, Fridays, Saturdays, and Sundays, totaling thirty-two hours per week. *See id.* ¶¶ 53–55.

7. Redacted Compl. ¶ 11 [# 10].

8. Redacted Compl. ¶ 12 [# 10].

9. *See* Redacted Compl. ¶ 41 [# 10].

10. *See* Redacted Compl. ¶ 3 [# 10].

11. Redacted Compl. ¶ 17 [# 10].

12. *See* Redacted Compl. ¶¶ 19, 23–25, 53–54, 57 [# 10].

13. Redacted Compl. ¶ 42 [# 10].

14. *See* Redacted Compl. ¶ 44 [# 10].

15. Redacted Compl. ¶ 44 [# 10].

home."[16] Johnson also questioned whether it was fair that Burns received extra pay in the form of a night-shift differential and Sunday pay.[17]

Supervisory Federal Air Marshal ("FAM") James Ouellette and another FAM felt that Johnson did not approve of a civilian employee being responsible for assigning and scheduling international missions.[18] Johnson called the Boston office's scheduling model "stupid" and proposed that the responsibility of scheduling missions on international flights go to Supervisory FAMs.[19] On or about May 31, 2012, Johnson officially implemented this change, taking away Burns' responsibility for scheduling security missions on international flights and dividing the task among nine male Supervisory FAMs.[20] This change left Burns with clerical tasks and other "menial tasks that everyone else assigned to Operations also performed."[21]

In addition to the change in her job duties, Burns has three other grievances against Johnson. First, he once said, "so you do still work here," which she interpreted to suggest that she was not performing her job duties.[22] Second, Johnson discredited Burns' work ethic, used a "sharp and irritated tone" with her, and on one occasion turned his back to her.[23] Third, Johnson often walked around the office carrying a baseball bat, which he allegedly used to intimidate Burns.[24]

On June 25, 2012, Burns left work on medical leave for anxiety resulting from Johnson's conduct.[25] The next day, based "upon the intimidation and hostile working environment created and maintained" by Johnson, Burns "reluctantly" applied for early retirement effective July 31, 2012.[26] Burns alleges that she was constructively discharged.[27]

Burns asserts seven counts against the Defendants: (1) gender-based discrimination; (2) retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) sexual harassment, in violation of Title VII; (6) creation of a hostile work environment; and (7) a violation of Article X of the Massachusetts Declaration of Rights.[28] The Secretary has moved to dismiss all claims against him except the first; Johnson has moved to dismiss all claims against him.[29]

### III. *Discussion*

#### 1. *Title VII Claims Against Defendant Johnson*

Title VII requires that "all claims be brought against the 'head of the [federal] department, agency, or unit, as appropri-

---

16. Redacted Compl. ¶ 44 [# 10].

17. *See* Redacted Compl. ¶ 55 [# 10].

18. *See* Redacted Compl. ¶¶ 27, 32 [# 10]; *see also* Redacted Compl. ¶ 15 [# 10].

19. Redacted Compl. ¶ 29 [# 10].

20. *See* Redacted Compl. ¶¶ 58, 65 [# 10].

21. Redacted Compl. ¶ 66 [# 10]; *see* Redacted Compl. ¶ 67 [# 10].

22. Redacted Compl. ¶ 33 [# 10].

23. Redacted Compl. ¶ 27 [# 10].

24. *See* Redacted Compl. ¶¶ 18, 36 [# 10]; *see also id.* ¶¶ 33, 37, 43, 74, 76–77 [# 10].

25. Redacted Compl. ¶ 84 [# 10].

26. Redacted Compl. ¶ 86 [# 10].

27. Redacted Compl. ¶ 102 [# 10].

28. Redacted Compl., 10–13 [# 10].

29. Mem. Supp. Defs.' Mot. Dismiss All Claims Except Count I Against Secretary, 5 [# 19] [hereinafter Defs.' Mem.].

ate.' " [30] Here, Burns has asserted her Title VII claims—Counts 1, 2, 5, and 6—against both defendants. Because Johnson is not the head of the department, agency, or unit at issue, Counts 1, 2, 5, and 6 are dismissed against him. Indeed, Burns assents to this relief.[31]

### 2. Gender Discrimination

In Count 1, Plaintiff alleges gender discrimination in violation of Title VII.[32] Gender discrimination in violation of Title VII can mean one of two things. It can mean that the defendant took a discrete, adverse employment action against the plaintiff because of his or her gender.[33] Such adverse employment action can include failure to promote or termination, including constructive termination.[34] Regardless of its form, an "adverse employment action" must " 'affect[ ] employment or alter[ ] the conditions of the workplace,' " [35] and such an action "typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significant-

ly different responsibilities, or a decision causing significant change in benefits.' " [36] Gender discrimination in violation of Title VII can also mean that the defendant harassed the plaintiff based on his or her gender and thereby created a gender-based hostile work environment.[37]

Here, Burns does not identify which type of gender discrimination she is alleging in Count 1. Because Burns alleges a gender-based hostile work environment in Counts 5 and 6, however, this Court assumes that Count 1 alleges the first type of gender discrimination, that is, an adverse employment action based on gender. Although she does not identify an allegedly discriminatory act,[38] she appears to allege that her job duties were reduced because of her gender, and, as a result, she was constructively discharged.

As the Defendants concede,[39] such a claim survives a Rule 12(b)(6) motion, to the extent that the claim is asserted against the Secretary.[40]

---

**30.** *Soto v. U.S. Postal Serv.,* 905 F.2d 537, 539 (1st Cir.1990) (quoting 42 U.S.C. § 2000e–16(c)).

**31.** Defs.' Mem., 5[# 19].

**32.** Redacted Compl., 10[# 10].

**33.** *See Johnson v. Univ. of P.R.,* 714 F.3d 48, 53 (1st Cir.2013).

**34.** *See id.; Ahern v. Shinseki,* 629 F.3d 49, 59 (1st Cir.2010) ("[A] claim of constructive discharge must point to evidence in the record showing that, as a result of discrimination, [the plaintiff's] 'working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign.' " (quoting *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 28 (1st Cir.2002))).

**35.** *Morales–Vallellanes v. Potter,* 605 F.3d 27, 35 (1st Cir.2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 61–62, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).

**36.** *Id.* (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

**37.** *Johnson,* 714 F.3d at 53 ("Discrete acts and hostile work environment claims are 'different in kind,' because hostile work environment claims by their nature involve repeated conduct and a single act of harassment may not be actionable on its own." (internal citations omitted)).

**38.** Burns alleges only that she suffered "unlawful discrimination on the basis of gender, unequal treatment, [and] oppressive acts and omissions." Redacted Compl. ¶ 97[# 10].

**39.** *See* Defs.' Mem., 7[# 19].

**40.** *See supra* text accompanying notes 31 and 32.

### 3. Retaliation

Burns alleges in Count 2 that the Defendants retaliated against her in violation of Title VII. Specifically, she alleges that, within one week of when she "voiced her concerns to multiple supervisors about Johnson's conduct and the threatening and intimidating brandishing of a baseball bat," Johnson retaliated against her by taking away the job duty of scheduling international missions.[41] This alleged retaliation, in turn, resulted in Burns' alleged constructive discharge.[42]

■ To prove retaliation ·in violation of Title VII, a plaintiff must establish that (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection existed between the two events.[43]

With regard to the first element, although a plaintiff need not prove the underlying Title VII violation, she "must at the very least have a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'"[44] Further, a complaint of general misconduct by a supervisor, unrelated to the complainant's race, color, gender, religion, or national origin, is not activity protected by Title VII.[45]

■ Here, Burns has failed to allege that she engaged in an activity protected by Title VII. Burns' alleged protected activity was her complaint about Johnson's behavior.[46] She does not allege, however, that when she complained, she said that she believed that Johnson's behavior was based on her gender.[47] Thus her complaints about Johnson constitute only

---

41. Redacted Compl. ¶ 100 [# 10].

42. Redacted Compl. ¶ 102 [# 10].

43. *Colón v. Tracey*, 717 F.3d 43, 49 (1st Cir. 2013); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013) ("[A] plaintiff making a [Title VII] retaliation claim ... must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 262 (1st Cir. 1999) (explaining that plaintiff's Title VII retaliation claim failed because he did not assert "that *at the time he complained* he believed [the employer's] distemper to be in violation of Title VII" (emphasis added)).

44. *Morales–Cruz v. Univ. of P.R.*, 676 F.3d 220, 226 (1st Cir.2012); *see also Ahern*, 629 F.3d at 51 (explaining that Title VII is "not intended to function as a collective panacea for every work-related experience that is in some respect unjust, unfair, or unpleasant").

45. *See Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir.2011) ("Title VII is not a general bad acts statute ... and it does not prohibit ... employers from retaliating against an employee based on her opposition to ... practices that are outside the scope of Title VII." (citing *Crowley v. Prince George's Cnty., Md.*, 890 F.2d 683, 687 (4th Cir.1989))); *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009) (" 'The term "protected activity" refers to action taken to protest or oppose *statutorily prohibited discrimination.*' " (emphasis added) (quoting *Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir.2000))); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient [under Title VII]." (citing *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir.1997))).

46. *See* Pl.'s Mem., 9–10 [# 32].

47. *See* Redacted Compl. ¶ 36 [# 10] ("Plaintiff stated to her supervisor ... that the manner in which ... Johnson looked at her and spoke to her made her very nervous. Plaintiff continued by stating that she believed ... Johnson used the baseball bat as a tool to intimidate her." (internal quotation marks omitted)); Redacted Compl. ¶ 45–46 [# 10] ("Plaintiff stated ... that she did not believe ... Johnson liked her personally and feared he would intentionally damage her career." (internal quotation marks omitted)); *cf. Higgins*, 194 F.3d at 262.

"mere complaining in general terms"[48] about "general bad acts"[49] rather than activity protected by Title VII.

Burns argues that her *Complaint* is "littered with allegations that the sole motive for taking away Plaintiff's duties and subsequent discharge was based upon her gender."[50] Regardless of what Burns *now* alleges was Johnson's motivation, she does not allege that *when she initially complained* about Johnson she identified her gender as Johnson's motivation. Her initial complaint did not constitute protected activity under Title VII.

Because Burns fails to allege sufficient facts with regard to a Title VII retaliation claim, Count 2 is dismissed in its entirety.[51]

### 4. *Sexual Harassment/Hostile Work Environment*

In Count 5 of the complaint, Burns alleges that Johnson sexually harassed her in violation of Title VII.[52] In Count 6, Burns alleges that she was subjected to a hostile work environment based on her gender in violation of Title VII.[53]

There are two types of Title VII sexual harassment claims: hostile work environment and "quid pro quo" harassment.[54] Quid pro quo harassment occurs if "a supervisor uses his superior position to extract sexual favors from a subordinate and, if rebuffed, retaliates by taking action that adversely impacts the subordinate's employment."[55] Nothing in the complaint states directly or implies that Burns is alleging quid pro quo harassment, despite her passing reference to this type of harassment in her opposition to the Defendants' motion.[56] This Court therefore dismisses Count 5 in its entirety, and the following analysis of hostile work environment pertains to Count 6.

To state a claim for a hostile work environment under Title VII, a plaintiff must allege sufficient facts to show that her workplace was " 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [her] employment and create an abusive working environment.' "[57] Offhand comments and isolated incidents are insufficient to state a hostile work environment claim.[58]

48. *Tomanovich*, 457 F.3d at 663.

49. *Bonds*, 629 F.3d at 384.

50. Pl.'s Mem., 13 [# 32].

51. Given this analysis, this court need not reach the parties' arguments regarding the timing of the alleged events. *See* Defs.' Mem., 8–9 [# 19]; Pl.'s Mem., 9–12 [# 32].

52. *See* Redacted Compl. ¶¶ 114–18 [# 10].

53. *See* Redacted Compl. ¶¶ 120–23 [# 10].

54. *See, e.g., Gerald v. Univ. of P.R.*, 707 F.3d 7, 20 & n. 6 (1st Cir.2013); *Pérez–Cordero v. Wal–Mart P.R., Inc.*, 656 F.3d 19, 26 (1st Cir.2011).

55. *Gerald*, 707 F.3d at 20 (citing *Valentín–Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 93 (1st Cir.2006)).

56. *See* Pl.'s Mem., 18 [# 32]. Burns appears to argue that a co-worker's testimony that Johnson did not "hit it off" with her, Redacted Compl. ¶ 56 [# 10] (internal quotations omitted), constitutes quid pro quo harassment, *see* Pl.'s Mem., 18 [# 32]. Neither Burns' complaint nor her opposition, however, contain any reference to sexual favors.

57. *Colón–Fontánez v. Municipality of San Juan*, 660 F.3d 17, 43 (1st Cir.2011) (quoting *Quiles–Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir.2006)).

58. *Id.* at 44; *see also Ahern*, 629 F.3d at 59 ("Toiling under a boss who is tough, insensitive, unfair, or unreasonable can be burdensome, but Title VII does not protect employees from the 'ordinary slings and arrows that suffuse the workplace every day.' " (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 425 (1st Cir.1996))).

Further, if a defendant's "conduct is equally harsh towards men and women, there is no hostile work environment based on sex."[59]

Here, there appear to be three main factual allegations underlying Burns' hostile work environment claim. First, Burns alleges that Johnson once said, "so you do still work here," which Burns interpreted as a suggestion that she was not performing her job duties.[60] Second, Johnson discredited Burns' work ethic; used a "sharp and irritated tone" with her; and on one occasion turned his back to her.[61] Third, Johnson often walked around the office carrying a baseball bat, which he allegedly used to intimidate Burns.[62]

■ Setting aside the issue of the baseball bat, Burns has not alleged that Johnson took the other specified actions (that he said "so you do still work here"; that he used a "sharp and irritated tone" with her; and that on one occasion he turned his back on her) because of her gender.[63] Moreover, even if Burns *had* alleged that Johnson acted this way because of her gender, her claim, as premised on these actions, would still fail.

Burns has not alleged that these actions occurred more than once, and for that reason they were not "pervasive."[64] Nor were these actions, which were offhand comments and isolated incidents, severe enough, as matter of law, to create a hostile work environment.[65] Accordingly, these actions cannot form the basis of a hostile work environment claim.

■ The issue of Johnson's baseball bat is more complicated. As the Defendants point out, Burns knew that Johnson carried the baseball bat all the time, including around male employees.[66] Burns does not explicitly allege that Johnson's habit of carrying a baseball bat in the office was directed toward her as a woman.[67] Burns' complaint does, however, quote testimony of co-workers, including Supervisory FAM Ouellette, who assert that Johnson treated Burns differently because of her gender.[68] This testimony suggests that Johnson's pervasive action of carrying the baseball bat may also have been discriminatory.[69] As such, Burns has just barely met her burden at this stage with respect to her hostile work environment claim.

**59.** *Reine v. Honeywell Int'l Inc.*, 362 Fed. Appx. 395, 397 (5th Cir.2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 140, 178 L.Ed.2d 35 (2010) (citing *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270–71 (5th Cir.1998)); *see Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir.2000) ("[B]ecause Title VII is premised on eliminating *discrimination*, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit."); *Luciano v. Coca-Cola Enters., Inc.*, No. 02–10895–RGS, 2004 WL 1922137, at *3 (D.Mass. Aug. 30, 2004) (Stearns, J.) (holding that the plaintiff's allegations of "uncivil treatment directed at her and her co-workers, male and female alike," did not amount to a hostile work environment claim).

**60.** Redacted Compl. ¶ 33 [# 10].

**61.** Redacted Compl. ¶ 27 [# 10].

**62.** *See* Redacted Compl. ¶¶ 18, 36 [# 10]; *see also id.* ¶¶ 33, 37, 43, 74, 76–77 [# 10].

**63.** *See* Redacted Compl. ¶¶ 33, 72 [# 10].

**64.** *Colón–Fontánez*, 660 F.3d at 43.

**65.** *See id.* at 44.

**66.** *See* Redacted Compl. ¶¶ 33, 36–37, 43, 74, 76–77 [# 10].

**67.** *Cf. Reine*, 362 Fed.Appx. at 397; *Holman*, 211 F.3d at 403; *Luciano*, 2004 WL 1922137, at *3.

**68.** *See* Redacted Compl. ¶¶ 26–28, 32, 47, 85 [# 10].

**69.** *See Colón–Fontánez*, 660 F.3d at 43.

Accordingly, Count 6 survives as against the Secretary.[70]

### 5. *Intentional and Negligent Infliction of Emotional Distress*

Count 3 alleges a claim for intentional infliction of emotional distress, and Count 4 alleges a claim for negligent infliction of emotional distress.

■■■ Title VII creates "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination."[71] As such, to the extent that Counts 3 and 4 are premised on the conduct underlying Burns' Title VII claims, Title VII is her sole remedy. There is no indication in either Burns' complaint or in her opposition to the Defendants' motion that Counts 3 and 4 are premised on conduct other than that which underlies her Title VII claims.[72] Accordingly, because Title VII is the only remedy for Counts 3 and 4, these counts are dismissed, and this Court need not reach the parties' discussion of exhaustion of administrative remedies under the Federal Employees Compensation Act.[73]

### 6. *Article X of the Massachusetts Declaration of Rights*

Finally, Count 7 alleges that the Defendants violated Article X of the Massachusetts Declaration of Rights. Specifically, Burns alleges that she had a property interest in her job and that she was constructively discharged without due process of law in violation of Article X.

■■■ The Civil Service Reform Act ("CSRA")[74] "comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against federal employees. It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review."[75] The CSRA preempts federal employees' court claims alleging that personnel actions, including termination, violate the federal Constitution[76] or state law.[77]

Here, the CSRA preempts Count 7.[78] It is dismissed.

### IV. *Conclusion*

■■■ For the foregoing reasons, the Defendants' *Motion to Dismiss All Claims*

---

**70.** As discussed above, Count 6, a Title VII claim, is dismissed against Johnson because he is not the head of the department, agency, or unit at issue. *See supra* notes 30–31 and accompanying text.

**71.** *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *see DeGrace v. Rumsfeld*, 614 F.2d 796, 808 (1st Cir.1980) ("Title VII ... provides the exclusive remedy for claims of discrimination in federal employment ...." (citing *Brown*, 425 U.S. at 829, 96 S.Ct. 1961)).

**72.** *See* Pl.'s Mem., 18–20 [# 32].

**73.** *See* Defs.' Mem., 11–12 [# 19]; Pl.'s Mem., 20–22 [# 32]. Burns also argues that her emotional distress claims arise "from conduct which was retaliatory, [and] as a result said

conduct was not within the scope of [D]efendant Johnson's employment." Pl.'s Mem., 18 [# 32]. Because this Court has already determined that Burns has failed to state a claim for retaliation, *see supra* notes 42–52 and accompanying text, this argument is unavailing.

**74.** Pub.L. No. 95–454, 92 Stat. 1111 (1978).

**75.** *United States v. Fausto*, 484 U.S. 439, 443, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (internal quotation marks and alterations omitted).

**76.** *See Barrios v. Dep't of Army*, 884 F.2d 28, 30–31 (1st Cir.1989) (citing *Bush v. Lucas*, 462 U.S. 367, 385–86, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)).

**77.** *See id.* at 31–32.

**78.** Burns fails to discuss Count 7 in her opposition to the Defendants' motion to dismiss.

*Except Count 1 Against the Secretary* [# 18] is ALLOWED IN PART and DENIED IN PART. It is DENIED with respect to Count 6 as against Defendant Secretary. It is ALLOWED in all other respects.

AN ORDER HAS ISSUED.