# United States Court of Appeals

## For the First Circuit

No. 16-2451

VICTOR A. SEPÚLVEDA-VARGAS,

Plaintiff, Appellant,

v.

CARIBBEAN RESTAURANTS, LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

Juan M. Frontera-Suau, with whom Kenneth Colon and Frontera Suau Law Offices, PSC were on brief.
Alberto J. Bayouth-Montes, with whom Carlos E. George-Iguina and O'Neill & Borges LLC were on brief.

April 30, 2018

**THOMPSON**, **Circuit Judge**.  Today's opinion is a lesson straight out of the school of hard knocks.  No matter how sympathetic the plaintiff or how harrowing his plights, the law is the law and sometimes it's just not on his side.  See Medina-Rivera v. MVM, Inc., 713 F.3d 132, 138 (1st Cir. 2013) (quoting Turner v. Atl. Coast Line R.R. Co., 292 F.2d 586, 589 (5th Cir. 1961) (Wisdom, J.) ("[H]ard as our sympathies may pull us, our duty to maintain the integrity of the substantive law pulls harder.")

## Stage Setting

Plaintiff, Victor A. Sepúlveda-Vargas ("Sepúlveda"), sued Defendant, Caribbean Restaurants, LLC ("Caribbean"), alleging a violation of the Americans with Disabilities Act ("ADA" or the "Act"), 42 U.S.C. § 12101, et seq., which prohibits discrimination against a "qualified individual," see id. § 12112(a), "relevantly defined as a person 'who, with or without reasonable accommodation, can perform the essential functions' of [his] job[.]"  Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 454 (1st Cir. 2016) (quoting 42 U.S.C. § 12111(8)).  Caribbean, which operates the Burger King franchise throughout Puerto Rico, had previously employed Sepúlveda as an assistant manager.  In 2011, while Sepúlveda was attempting to make a bank deposit on behalf of Caribbean, he was attacked at gunpoint, hit over the head, and had his car stolen.  He suffered, as a result, from post-traumatic

- 2 -

stress disorder and major depression disorder. In response to these diagnoses, Sepúlveda requested that Caribbean provide him with a fixed work schedule (as opposed to a rotating one) and that it move him to a Burger King location in an area not prone to crime. That is, Sepúlveda asked Caribbean, which schedules all of its managers such that they rotate among three distinct work shifts (one from 6:00am to 4:00pm, another from 10:00am to 8:00pm, and the last from 8:00pm to 6:00am), to assign him to one specific timeslot consistently. While Caribbean initially acquiesced to this request, it thereafter informed Sepúlveda that he would have to go back to working rotating shifts. Eventually, in 2013, Sepúlveda resigned from his position with Caribbean.

At the district court below, Sepúlveda argued that although Caribbean recognized he was disabled within the definition of the ADA, it (1) failed to reasonably accommodate him by permanently providing him with a fixed work schedule as opposed to one comprised of rotating shifts and (2) that employees of Caribbean engaged in a series of retaliatory actions against him as a result of his request for a reasonable accommodation, thus creating a hostile work environment.[1] The district court weighed

_____

[1] Sepúlveda also originally brought separate claims of discrimination under Puerto Rico law. Because the district court granted summary judgment in favor of Caribbean on the both of the federal ADA claims, it declined to exercise supplemental jurisdiction over the remaining Puerto Rico-based claims and

- 3 -

both sides' arguments, ultimately concluding that Sepúlveda was not a "qualified individual" under the ADA and that the supposedly retaliatory acts comprising his hostile work environment claim were insufficient to support his claim. It therefore granted Caribbean's summary judgment motion, a decision from which Sepúlveda appeals. We now affirm.

## Standard of Review

Reviewing the grant of summary judgment de novo, we construe the record in the light most favorable to the non-movant, resolving all reasonable inferences in that party's favor. See Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). In doing so, we will uphold summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), and will reverse "only if, after reviewing the facts and making all inferences in favor of the non-moving party [here, Sepúlveda], the evidence on record is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'" Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).

---

dismissed those without prejudice. Sepúlveda makes no challenge here to their dismissal.

## Discussion

In general, for purposes of bringing a failure to accommodate claim under the ADA, a plaintiff must show that: (1) he is a handicapped person within the meaning of the Act; (2) he is nonetheless qualified to perform the essential functions of the job (with or without reasonable accommodation); and (3) the employer knew of the disability but declined to reasonably accommodate it upon request. See Lang, 813 F.3d at 454. The district court's focus below (and the parties' focus in their briefs on appeal) revolves around the second of those three factors, namely, whether in light of Sepúlveda's requested accommodation to be assigned fixed shifts he was still qualified to perform the essential job functions required of Caribbean assistant managers. An essential function is one that is "fundamental" to a position. See Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001). "The term does not include 'marginal' tasks, but may encompass 'individual or idiosyncratic characteristics' of the job." Id. (quoting Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 34 (1st Cir. 2000)). Unsurprisingly, we have explained that "the complex question of what constitutes an essential job function involves fact-sensitive considerations and must be determined on a case-by-case basis." Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 25 (1st Cir. 2002). In making this case-by-case determination, the ADA instructs us to give

consideration "to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). And the Equal Employment Opportunity Commission's ("EEOC") implementing regulations of the Act further tell us that beyond the employer's judgment, things to be considered include (but are not limited to) factors like "[t]he consequences of not requiring the incumbent to perform the function[,]" "[t]he work experience of past incumbents in the job[,]" and "[t]he current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3). Such considerations are not meant "to enable courts to second-guess legitimate business judgments, but, rather, to ensure that an employer's asserted requirements are solidly anchored in the realities of the workplace, not constructed out of whole cloth." Gillen, 283 F.3d at 25.

Here, the district court fully considered these factors and concluded that being able to work rotating shifts was an essential function of the assistant manager job with Caribbean. First, the court pointed out that it was uncontested that from Caribbean's perspective, the ability to work rotating shifts was essential. Indeed, Caribbean explained that rotating shifts were necessary for the equal distribution of work among the managerial

- 6 -

staff and Sepúlveda conceded this point in his deposition. That is to say, accommodating Sepúlveda permanently would have had the adverse impact of inconveniencing all other assistant managers who would have to work unattractive shifts in response to Sepúlveda's fixed schedule. We have previously explained that such "idiosyncratic characteristics as scheduling flexibility" should be considered when determining the essentiality of a job function. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 22 (1st Cir. 2004); see also Laurin v. Providence Hosp., 150 F.3d 52 (1st Cir. 1998).[2] The court also explained that Sepúlveda admitted in his deposition that rotating shifts was a responsibility he had at Caribbean and that this was the case for all other assistant managers. Moreover, the court noted that the job application Sepúlveda filled out and signed when he was hired made clear that

---

[2] On appeal, Sepúlveda argues that the district court's reliance on Laurin v. Providence Hospital was erroneous because that case was decided on materially distinguishable facts. Laurin involved a hospital's rotating shifts requirement for nurses working in a 24-hour maternity ward. Id. at 59. Given that setting, we had little difficulty in concluding that the rotating shifts requirement was essential. As we explained, "[m]edical needs and emergencies . . . do not mind the clock, let alone staff-nurse convenience," and "to suggest otherwise would be tantamount to maintaining that night work is not an 'essential function' of a night watchman's job, even though that is the only time the premises are not otherwise occupied." Id. Though we agree with Sepúlveda that Laurin provides a more clear cut example of an "essential" rotating shifts requirement, the district court's citation to the case does not undermine its otherwise sound conclusion that Caribbean's rotating shifts requirement was also an essential job function.

all Caribbean managerial employees had to be able to work different shifts in different restaurants. And it pointed to a newspaper advertisement for the job that listed the need to work rotating shifts as a requirement. While the court did note that Caribbean initially granted Sepúlveda the accommodation on a temporary basis, that fact did "not mean that it conceded that rotating shifts was a 'non-essential' function." Sepúlveda-Vargas v. Caribbean Restaurants LLC, No. CV 13-1622 (SEC), 2016 WL 8710980, at *5 (D.P.R. Sept. 30, 2016). And we agree. "To find otherwise would unacceptably punish employers from doing more than the ADA requires, and might discourage such an undertaking on the part of employers." Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001).[3]

---

[3] Oddly, Sepúlveda seems to think that Phelps is inapplicable to the instant case because it relied in part on the logic of a Seventh Circuit case, Basith v. Cook County, 241 F.3d 919 (7th Cir. 2001), that has slightly distinguishable facts from the those found here. This argument is strange to us; Phelps says what it says and, regardless of the underlying facts of a Seventh Circuit case cited in Phelps, we see no reason how its general admonishment against punishing an employer for going above and beyond that required under the ADA is irrelevant to the case at hand. But, for the sake of thoroughness, we will briefly entertain Sepúlveda's argument. At core, Sepúlveda appears to believe the following. In Basith, an employer granted an accommodation purportedly requested by an employee under the ADA. In doing so, however, the employer stated, "[a]lthough this is a change in the job functions, which is not required, I will agree to it." Basith, 241 F.3d at 930. That is, the employer knew the employee was not a "qualified individual" under the ADA and chose to make a temporary accommodation for him in spite of this fact. Because, here, Caribbean's impetus for granting the temporary accommodation was its mistaken belief that it was required to do so by the ADA,

- 8 -

As for Sepúlveda's retaliation claim, the ADA forbids retaliation "against any individual because such individual has opposed any act or practice made unlawful . . . or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203. These sorts of claims "may succeed even where [a] disability claim fails." Valle-Arce v. P.R. Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011). To establish a prima facie claim of retaliation, it is incumbent for a plaintiff to show that he was engaged in protected conduct, that he was subject to an adverse employment action, and that there was a causal connection between the adverse employment action and the conduct. See Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007). Not all retaliatory actions, however, suffice to meet the ADA's anti-retaliation provision. Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or

---

Sepúlveda believes (for reasons that are unclear) that this renders the logic of Basith and Phelps irrelevant. Not so. Sepúlveda cites no case (and we can find none) that requires this kind of "intent to go above and beyond the ADA" in order to apply the logic of Phelps and, importantly, we provided no such caveat when we decided Phelps. To the contrary, this Court only held that evidence of non-required accommodations will not be used against a company in determining what is or isn't an essential job function, without mention of whether the employer meant to go above and beyond the ADA.

supporting a charge of discrimination." Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Indeed, we have explained that "[f]or retaliatory action to be material, it must produce 'a significant, not trivial harm,'" Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 36 (1st Cir. 2011) (quoting Carmona-Rivera, 464 F.3d at 20), and that "actions like 'petty slights, minor annoyances, and simple lack of good manners will not [normally] create such deterrence.'" Id. at 36-37 (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68) (alteration in original).

At the district court--and again in his briefs filed with us--Sepúlveda argued that the following actions were materially adverse: (1) he was scolded by his direct supervisor for requesting an accommodation from Caribbean's human resources department even though the direct supervisor had already denied it; (2) his direct supervisor allegedly accused him of taking four pills of unnecessary medication, which made him feel embarrassed; (3) his direct supervisor attempted to briefly change Sepúlveda's schedule so he could attend a required managers' seminar and the supervisor articulated that he did not believe Sepúlveda had a serious medical condition when Sepúlveda tried to get out of attending the seminar; (4) he was forced to pull down his pants in front of a restaurant manager to show that he had a skin condition

requiring medical treatment; (5) his direct supervisor and other employees called him a "cry baby" on three occasions; (6) he was forced to take a paid vacation until he passed a health safety examination Caribbean required and the Commonwealth of Puerto Rico highly recommends, even though he had been working with an expired license for some time; (7) he was told to stay past his shift's end until 11:00pm on one occasion and was admonished when he failed to abide by this instruction; and (8) he was generally treated differently than other assistant managers in his working hour requirements and labor assignments. He also argued that even if any of these individual actions were not materially adverse, they certainly rose to that level when looked at collectively and that together they also amounted to a hostile work environment.

The court below found that none of the actions Sepúlveda argued to be adverse were--taken on their own--material. For example, the court explained while it was true that being reprimanded by his supervisor for going behind his back to Human Resources for an accommodation and being "accused" of taking four pills was "linked to a protected activity," each incident was "insufficient to sustain an adverse employment action." Sepúlveda-Vargas, 2016 WL 8710980, at *6. The court explained, that the fact "[the supervisor] may have been angered and overreacted because Sepúlveda went over his head to request accommodation, 'while perhaps improper, does not by itself

- 11 -

constitute and adverse employment action for a retaliation claim.'" Id. (quoting De Jesus-Sánchez v. Taber Partners I, LLC, 551 F. Supp. 2d 136, 141 (D.P.R. 2007)). As for Sepúlveda's argument that making a temporary change to his schedule so that he could attend a required managers' seminar was an adverse action, the district court explained that even if "[the supervisor's] approach [by saying he didn't believe Sepúlveda had an ailment] may have been somewhat rude or insensitive, 'a supervisor's unprofessional managerial approach and accompanying efforts to assert her authority are not the focus of the discrimination laws.'" Id. at *7 (quoting Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 47 (1st Cir. 2003)); see also Colón-Fontánez, 660 F.3d at 45 (explaining that accusations of being a "hypochondriac" and "faking it" though uncomfortable "do not rise to the level of severity or pervasiveness" to sustain a retaliation claim). The court also rejected Sepúlveda's assertion that he was forced, on one occasion, to pull down his pants to reveal a medical skin condition. Not only did Sepúlveda fail to "provide sufficient details surrounding this incident," but he additionally failed to demonstrate how he was "forced" to do so or "explain how his supervisor's disbelief regarding a condition for which he had requested no accommodation nor provided any medical evidence before was related to a protected activity." Sepúlveda-Vargas, 2016 WL 8710980, at *7. The court next rejected Sepúlveda's notion

that being called a "cry baby" was an adverse action.  Sepúlveda alleged that he was told by one employee that she had heard someone else call him a "cry baby" and further alleged that he had personally heard two other employees call him the same.  The court rejected the first allegation as hearsay within hearsay.  As for the latter two, it explained that while "it is unclear whether these statements were related to a protected activity or to some other workplace issue," even assuming it was connected to a protected event, "[t]he case law is clear that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not amount to adverse employment action, not even to establish an objectively hostile or abusive work environment." Id. (quoting Colón-Fontánez, 660 F.3d at 44).

The remaining assertions by Sepúlveda regarding supposed adverse actions were all determined to be similarly unmeritorious. The court concluded that Caribbean's placement of Sepúlveda on forced paid vacation was not adverse, particularly where it was mandated because Sepúlveda had an expired health certificate and Caribbean could get in trouble with the Puerto Rico Department of Health if Sepúlveda did not pass the required examinations for the certificate.  Id. at *7-8.  And the fact that Sepúlveda was on one occasion told to stay past his shift's end until 11:00pm and was reprimanded when he defied the instruction was also not tantamount to an adverse employment action.  The restaurant Sepúlveda worked

- 13 -

at had been closed by the Puerto Rico Department of Health due to a cockroach infestation and Caribbean required all managers to stay late on that occasion to ensure the restaurant was properly cleaned. This in and of itself is not adverse and, to the extent Sepúlveda may have been treated especially harshly for defying the instruction to stay until 11:00pm, the court noted that he "provide[d] no details regarding the severity of the alleged admonishment and his disciplinary record was not affected." Id. Next, the court explained that though "Sepúlveda timidly floats the idea that he was subject to differential treatment in working hours' requirements, in labor assignment, in understaffing of the shift he supervised, [and] in being subject to constant verbal warnings . . . he references fifty paragraphs of his additional statement of uncontested facts without even bothering to specify which paragraphs contain the relevant facts as to each of the four types of disparate treatment alleged therein." Id. Not just that, but he also "fail[ed] to discuss any case law to support his contention." Id. The court thus found the argument waived. Id. Finally, to the extent Sepúlveda argued the actions should be considered materially adverse when looked at together rather than individually, (thus comprising a hostile work environment), the court concluded otherwise, explaining that "[c]ollectively, these incidents amount to nothing more than the petty insults and minor annoyances which are insufficient to constitute an adverse

employment action under the ADA. . . . Drawing all reasonable inference in his favor, Sepúlveda did not demonstrate from an objective standpoint, that Caribbean's actions were sufficiently severe or pervasive to sustain a retaliatory hostile work environment, and so it fails." Id. at *9 (quoting Colón-Fontánez, 660 F.3d at 36-37).

Our de novo standard of review fails to yield any genuine issue of material fact that would lead us to draw a conclusion that differs from the district court. Because the court below got it right, we need not say anymore on the matter.

Affirmed.