# United States Court of Appeals
## For the First Circuit

No. 18-2164

BRIAN BELL,

Plaintiff, Appellant,

v.

O'REILLY AUTO ENTERPRISES, LLC, d/b/a O'Reilly Auto Parts,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Barron, Selya, and Boudin,
Circuit Judges.

Allan K. Townsend, with whom Chad T. Hanson was on brief, for appellant.
Christopher C. Taintor, with whom Norman, Hanson & DeTroy, LLC, was on brief, for appellee.

August 21, 2020

**BOUDIN, Circuit Judge.** Brian Bell alleged that O'Reilly Auto Enterprises ("O'Reilly") failed properly to accommodate his disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq, and the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4551 et seq. At trial, the jury found for O'Reilly. Bell now appeals.

Bell lives with Tourette's syndrome, attention-deficit/hyperactivity disorder, and major depression. He takes medication, but experiences motor tics, often accompanied by a mild verbal noise, and he cannot concentrate easily. With depression, he wakes up weary.

Despite these symptoms, Bell earned a position with O'Reilly to manage its store in Belfast, Maine. As store manager, Bell was "[r]esponsible for the sales, profitability, appearance, and overall operations of the store." Bell trained, supervised, and evaluated employees, monitored accounting, tracked inventory, and set prices. He oversaw a small team, usually about eight to twelve employees.

Bell worked as a store manager for months without incident. During this time, not counting breaks, Bell was scheduled to work slightly more than fifty hours a week and ten-and-a-half hours a day. Beyond these scheduled hours, Bell infrequently worked an additional fifteen to thirty minutes a week to complete tasks.

But work grew more intense when Bell lost two shift leaders, leaving only a few employees who could open and close the store. Unable to schedule employees for overtime, Bell made up the difference himself, working almost 100 hours a week on fifteen-hour days. He worked from around 6:30 a.m. to 9:30 p.m. almost every day, including weekends.

Bell's symptoms grew more severe and his motor tics grew more frequent and more painful. His concentration deteriorated, as did his sleep. He told his mental health provider that he felt overwhelmed. Bell broke down soon after. At work, exhausted, he began to tremble uncontrollably, his motor tics relentless. Bell left the store to take a break, resting in his truck parked outside, but his supervisor demanded that he return. Bell went to his mental health provider to discuss his symptoms.

O'Reilly then told Bell that before he could work again, he would have to get his provider to fill out a form confirming his fitness for duty. Bell's provider indicated that he would be fit to return to work a few days later so long as he received an accommodation. She later testified that she aimed to secure an accommodation for Bell that would protect him against "overwhelming stress" by preventing O'Reilly from placing him "into the kind of working schedule that he had had, working 50 hours or more."

The two settled on the following language for the proposed accommodation: "Mr. Bell because of his mental health issues should not be scheduled for more than 9 hours 5 days a week." Bell's provider checked a box indicating that Bell's "[m]ax hours per day of work" should be restricted to nine hours. Bell faxed this form to O'Reilly.

O'Reilly denied Bell's requested accommodation. Bell's district manager said that O'Reilly understood the form to be a hard cap on his worked hours; after Bell made clear that he intended only to request a restriction on his scheduled hours, Bell's district manager directed Bell to have his provider fill out a revised form to that effect.

The provider declined to revise the form, deeming the original language adequate to convey Bell's request. Instead, she invited O'Reilly to discuss the request with her if the company needed clarification. O'Reilly never did but eventually terminated Bell.

Bell sued O'Reilly in the federal district court in Maine. Among other claims, Bell alleged that O'Reilly violated the ADA and the MHRA when it failed to provide Bell with a reasonable accommodation. Those claims survived summary judgment and went to trial.

Bell's theory of the case was that he needed O'Reilly to accommodate his disability, he had requested a reasonable

accommodation, and O'Reilly had rejected it. O'Reilly had enlisted Bell to work "close to 100 hours a week, [and] his meds couldn't keep up." With the restriction, Bell's counsel argued, Bell would have "some protection" against this enlistment. But O'Reilly denied his request.

O'Reilly answered that the requested accommodation would have prevented Bell from performing a store manager's essential job functions. O'Reilly's witnesses testified that it was essential for store managers to work at least fifty hours a week, with the flexibility to do more, and Bell's requested restriction would have left him locked into a schedule below O'Reilly's "bare minimum scheduling requirement."

Bell replied that because his accommodation restricted only scheduled hours, he would have been able to work unscheduled hours. And he had confirmed in a letter to O'Reilly that he could work unscheduled hours "on occasion . . . [i]f necessary." Bell testified that "if there were no other option, then [he] would have a found a way" to work the hours needed to get the job done.

In closing O'Reilly's counsel pivoted, telling the jury that "if he can do it, that means he doesn't need the accommodation. . . . [and] he is at least not entitled to an accommodation under the law." He emphasized that "the judge will instruct you that even if you have a disability, you're entitled to an accommodation only if you need that accommodation in order

- 5 -

to do the essential functions of your job." The judge gave this instruction, and the jury returned a verdict for O'Reilly on all claims.

Bell timely appealed, and among other challenges argues that the district court erred in instructing the jury that to succeed on a claim that an employer failed to provide a reasonable accommodation, a plaintiff must prove that "he needed an accommodation to perform the essential functions of his job." Bell contends that a disabled employee who "experiences difficulty" due to his disability "in performing his job" may ultimately be entitled to a reasonable accommodation.

Where, as here, a motion for a new trial relies on "preserved claims of instructional error," the "questions as to whether the jury instructions capture the essence of the applicable law" are reviewed de novo. Thomas & Betts Corp. v. New Albertson's, Inc., 915 F.3d 36, 49 (1st Cir. 2019) (internal quotations omitted). Following the parties, we treat the MHRA as "coextensive with the ADA in all material respects." Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 74 n.2 (1st Cir. 2010).

The district court erred here when it instructed the jury that, for a disabled employee to make out a failure-to-accommodate claim, he must demonstrate that he needed an accommodation to perform the essential functions of his job. Giving the jury instructions their "most natural reading," United

States v. Pizarro, 772 F.3d 284, 300 (1st Cir. 2014), they required an employee to demonstrate that he could not perform the essential functions of his job without accommodation.

An employee who can, with some difficulty, perform the essential functions of his job without accommodation remains eligible to request and receive a reasonable accommodation. The ADA prohibits an employer from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8) (emphasis added).

For this reason, to make out a failure to accommodate claim, a plaintiff need only show that: "(1) he is a handicapped person within the meaning of the Act; (2) he is nonetheless qualified to perform the essential functions of the job (with or without reasonable accommodation); and (3) the employer knew of the disability but declined to reasonably accommodate it upon request." Sepúlveda-Vargas v. Caribbean Rests., LLC, 888 F.3d 549, 553 (1st Cir. 2018). A plaintiff can make out this kind of claim even when an employer has "pronounced itself fully satisfied with [the disabled employee]'s level of performance" before a

- 7 -

request.  Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 23 (1st Cir. 2004).

Vacation is appropriate "only if the error is determined to have been prejudicial based on a review of the record as a whole," Sony BMG Music Ent. v. Tenenbaum, 660 F.3d 487, 503 (1st Cir. 2011) (internal quotations omitted), but the error here prejudiced Bell.  By instructing the jury that an employee must demonstrate that he needed an accommodation to perform the essential functions of his job, the district court wrongly limited O'Reilly's potential liability.

O'Reilly responds that there was no prejudice because the challenged instruction was "functionally equivalent" to another instruction from the district court: that an employee must demonstrate "that the proposed accommodation would enable him to perform the essential functions of the job."  But this instruction does not say "by implication" whether the employee must demonstrate "that without the accommodation he was 'unable' to do" the essential functions of the job.  Rather, the instruction expresses only the well-settled rule that a proposed accommodation must be "effective," leaving an employee able to perform the essential functions of the job.  Trahan v. Wayfair Me., LLC, 957 F.3d 54, 66 (1st Cir. 2020).

O'Reilly also argues that there was no prejudice because no reasonable jury could have found that Bell would have been able

- 8 -

to perform the essential functions of his job with O'Reilly: it was essential that O'Reilly's store managers work at least fifty hours a week, with the flexibility to do more, but Bell had requested a scheduling restriction that would have left him unable to fulfill this role.  On this issue and on this record, a jury could have found for Bell.

The district court's judgment is <u>vacated</u> and the case is remanded for a new trial on Bell's failure-to-accommodate claim. Costs are to be taxed in favor of Bell.

<u>It is so ordered</u>.